UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES M. JONES,<br><br>Plaintiff,<br><br>v.<br><br>AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al.,<br><br>Defendants. | Civil Action No. 09-1075 (JDB) |

## MEMORANDUM OPINION

Before 2007, pilots who had turned sixty were prohibited from flying commercial airliners. In 2007, the Fair Treatment for Experienced Pilots Act ("FTEPA" or "the Act"), Pub. L. No. 110-135, 121 Stat. 1450 (2007), raised the mandatory retirement age for commercial airline pilots to sixty-five. FTEPA operates prospectively, however, and allows pilots who turned sixty before its enactment to return to flying commercial airliners only under very limited circumstances. James Jones, a former Continental Airlines pilot, challenges as unconstitutional FTEPA's restrictions on pilots who turned sixty before the Act passed. He also brings claims under federal and state anti-discrimination laws. For the reasons detailed below, the Court will dismiss Jones's complaint.

## BACKGROUND

In 1959, the Federal Aviation Administration enacted the so-called "Age 60" rule, which prohibited pilots from flying commercial airliners past their sixtieth birthday. See 14 C.F.R. § 121.383(c). FTEPA abrogated the Age 60 rule, and allows pilots to fly commercial airliners until

they turn sixty-five. See 49 U.S.C. § 44729(a), (d). The Act contains a "nonretroactivity" provision, however, that significantly limits the ability of pilots who turned sixty before FTEPA's passage (and who were thus forced to retire) to return to work. In general, such pilots may only fly for commercial airlines if they are "newly hired by an air carrier as a pilot on or after [FTEPA's] date of enactment without credit for prior seniority or prior longevity for benefits . . . under any labor agreement or employment policies of the air carrier." Id. § 44729(e)(1)(B).[1] Thus, pilots who turned sixty before December 13, 2007 -- the date of FTEPA's enactment -- may fly commercial airliners only if they work without credit for their past experience. FTEPA also contains a "protection for compliance" provision. This provision states that "[a]n action taken in conformance with [FTEPA] . . . or taken prior to the date of enactment of [FTEPA] in conformance with [the Age 60 rule], may not serve as a basis for liability or relief in a proceeding, brought under any employment law or regulation, before any court or agency of the United States or of any State or locality." Id. § 44729(e)(2).

Jones was a pilot for Continental Airlines between 1981 and 2007, until the Age 60 rule forced him to retire several weeks before FTEPA was passed. Am. Compl. ¶¶ 27, 30. Because Jones turned sixty before FTEPA's enactment, the Act permits him to work as a commercial airline pilot only if he does not receive credit for his prior seniority. Jones contends that this restriction, as well as FTEPA's protection for compliance provision, is unconstitutional. He also argues that Continental Airlines and the Air Line Pilots Association, International ("ALPA") -- the commercial airline pilots' collective bargaining representative -- violated federal and state

---

[1] FTEPA also permits such pilots to fly for commercial airlines if they were "in the employment of that air carrier in such operations on [FTEPA's] date of enactment as a required flight deck crew member." Id. § 44729(e)(1)(A). This provision is not relevant here.

employment laws by, inter alia, dismissing him upon his sixtieth birthday. Finally, Jones brings a claim against the Equal Employment Opportunity Commission ("EEOC") under the Freedom of Information Act ("FOIA"). The United States, ALPA, and Continental Airlines have each filed motions to dismiss. And the United States has filed a motion for partial summary judgment on Jones's FOIA claim.

## STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A claim to relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach," under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an

entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. See Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (the D.C. Circuit has "never accepted legal conclusions cast in the form of factual allegations" (internal quotation marks omitted)).

## ANALYSIS

### I.  Does FTEPA Violate Equal Protection?

Jones contends that FTEPA's nonretroactivity and protection for compliance provisions are discriminatory on the basis of age in violation of the Constitution's Equal Protection

guarantee.[2] Equal protection challenges based on age receive rational basis review. See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000); Gregory v. Ashcroft, 501 U.S. 452, 470 (1991). This standard provides that the government "may discriminate on the basis of age without offending the Constitution if the age classification in question is rationally related to a legitimate state interest." Kimel, 528 U.S. at 83. Age classifications "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Nguyen v. Immigration & Naturalization Serv., 533 U.S. 53, 77 (2001) (internal quotation marks omitted). Accordingly, "[t]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." Fed. Commc'ns Comm. v. Beach Commc'ns, Inc., 508 U.S. 307, 314-15 (1993) (internal quotation marks omitted). And legislative choices are "not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." Id. at 315. Thus, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." Id.

Jones insists that FTEPA's nonretroactivity provision[3] cannot survive even this forgiving review. He contends that classifications between airlines pilots are only rational if there is a

---

[2] Jones brings his constitutional challenges against the United States, ALPA, and Continental Airlines. See Am. Compl. ¶¶ 185-94. The Court need not address whether ALPA and Continental are proper defendants to these challenges, as the Court concludes that there is no constitutional violation.

[3] Although this provision is entitled "Nonretroactivity," 49 U.S.C. § 44729(e)(1), Jones disputes that FTEPA actually operates nonretroactively. See Pl.'s Opp'n to ALPA's Mot. to Dismiss ("Pl.'s Opp'n") [Docket Entry 16], at 14-17. This disagreement is irrelevant, however, as all parties agree that FTEPA permits Jones to fly commercial airliners only if he does not receive credit for his past seniority and longevity.

safety justification for the classification. See Pl.'s Opp'n at 35. And given that FTEPA generally allows pilots to fly commercial airliners until their sixty-fifth birthday, Jones argues that there can be no safety justification for restricting his ability to fly. According to Jones, then, without such a safety justification the nonretroactivity provision is irrational.

Jones's premise is flawed, however, because in regulating the aviation industry, Congress may take into account factors other than safety. Although safety of course is of paramount importance, see 49 U.S.C. § 40101(a)(1) (the Secretary of Transportation must consider "assigning and maintaining safety as the highest priority in air commerce"), Congress must balance safety considerations with other rational legislative goals, see, e.g., id. § 40101(a)(5) ("coordinating transportation by, and improving relations among, air carriers, and encouraging fair wages and working conditions"), (a)(9) ("preventing unfair, deceptive, predatory, or anticompetitive practices in air transportation"). Preserving a calm labor market is one such rational goal. See Kimel, 528 U.S. at 92-93 (Stevens, J., concurring in part and dissenting in part) ("Congress' power to regulate the American economy includes the power to regulate both the public and the private sectors of the labor market.").

Here, Congress could rationally have decided that allowing all retired commercial pilots between the ages of sixty and sixty-four to return to their prior positions with full seniority would disrupt the airline pilots' labor hierarchy. Under most airlines' employment structures, the longest serving pilots have seniority over their less-experienced colleagues. See Am. Compl. ¶¶ 39-41. Thus, without FTEPA's nonretroactivity provision, pilots reentering the labor force would force -- or "bump" -- all other employees down the seniority system. Indeed, this influx of labor could even lead to the termination of some junior pilots. It would have been rational for Congress to

conclude that this significant bumping would upset current pilots, causing at least some labor disharmony. It may be, as Jones insists, that more experienced pilots are generally safer than younger pilots. But it is for Congress, not this Court, to weigh that fact against other rational legislative considerations. See Beach Commc'ns, 508 U.S. at 313 ("[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."); Nordlinger v. Hahn, 505 U.S. 1, 17-18 (1992) ("[T]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." (internal quotation marks omitted)).[4]

Jones disputes that any labor unrest would result from retired pilots reentering the workforce. He alleges that bumping is common in the airline industry -- younger pilots are bumped whenever older pilots return from leave or furlough, for example -- and is written into pilots' collective bargaining agreements. Am. Compl. ¶¶ 39-41, 170. And Jones contends that such bumping creates no problems for labor relations. See Pl.'s Opp'n at 21-22. Indeed, ALPA concedes that "'labor unrest' or 'substantial economic disruption' does not ordinarily result when pilots return from leave or furlough and again exercise the rights associated with their existing place on the seniority list." ALPA's Reply in Supp. of Mot. to Dismiss [Docket Entry 25], at 7.

But Congress could have "rational[ly] speculat[ed]," Beach Commc'ns, 508 U.S. at 315, that bumping -- unproblematic on a small scale -- would cause at least some labor unrest if all

---

[4] Jones suggests that the success of the Railway Labor Act, 45 U.S.C. § 151 et seq. -- which applies to airlines, id. § 181 -- in resolving labor disputes negates any "labor harmony" justification for FTEPA. See Pl.'s Opp'n at 38-39. But the fact that one statute generally preserves labor peace does not render irrational Congress's desire to use a different law to achieve a similar purpose.

retired commercial pilots between the ages of sixty and sixty-four could immediately resume their prior position. Indeed, while pilots may expect to be bumped by their more senior colleagues returning from leave or furlough, they would not expect to be bumped by those who had already retired. Jones has not met his burden to negate the possibility that such concerns led Congress to apply FTEPA only prospectively. See id. at 314-15; see also United States R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179 (1980) ("The task of classifying persons for benefits inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." (internal quotation marks, citation, and ellipses omitted)).[5]

Nor has Jones met his burden to show that FTEPA's protection for compliance provision does not bear a rational relation to a legitimate government purpose. As an initial matter, it is not clear how this provision discriminates against Jones on the basis of his age. Even assuming that it does, however, the provision is rational. This portion of the Act simply provides that actions taken in compliance with FTEPA or the Age 60 rule cannot support liability under any employment law. See 49 U.S.C. § 44729(e)(2). It is rational for Congress to seek to minimize conflict between FTEPA and other employment laws. And it is rational -- and wholly consistent with the Constitution -- for Congress to provide that acts taken in compliance with federal law

---

[5] Jones repeatedly insists that, at the least, he has stated a "plausible" claim for relief, and therefore this matter cannot be resolved at the motion to dismiss stage. See, e.g., Pl.'s Opp'n at 19, 21, 34. But the Court has accepted as true all the factual allegations in Jones's complaint -- for example, that bumping is a common occurrence and does not normally result in any labor tension, Am. Compl. ¶ 170. Even accepting these factual allegations, Jones's claims fail as a matter of law.

cannot support employment discrimination claims under state law. See U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . ."). Accordingly, this provision survives rational basis review as well.[6]

## II. **Does FTEPA Violate Due Process?**

Jones next argues that FTEPA violates his procedural due process rights by removing from him, without a hearing, his contractual seniority rights at Continental Airlines, and his causes of action under state and federal anti-discrimination laws. But the Act does not offend due process. Even assuming that FTEPA's nonretroactivity provision takes away from Jones a protected property interest in contractual seniority rights, "[i]t is well established that statutes or ordinances of general applicability may condition or even prohibit the right to conduct a business without running afoul of procedural due process." Vaden v. Maywood, 809 F.2d 361, 364 (7th Cir. 1987) (footnote omitted); accord Minnesota State Bd. for Cmty. Colleges v. Knight, 465 U.S. 271, 284 (1984) ("'General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.'" (quoting Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445 (1915))). Thus, the nonretroactivity provision's passage by Congress affords Jones all the process due him.

---

[6] Although Jones objects to ALPA's discussion of a report by the Aviation Rulemaking Committee, issued before FTEPA's passage, which apparently supported the two provisions of FTEPA at issue here, see Pl.'s Opp'n at 28-32, the Court has not considered this report in reaching its decision.

Similarly, FTEPA's protection for compliance provision does not violate procedural due process. Although individuals do have a protected property interest in legal causes of action, such as those for age discrimination, Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982), "the State remains free to create substantive defenses or immunities for use in adjudication -- or to eliminate its statutorily created causes of action altogether . . . . In each case, the legislative determination provides all the process that is due." Id. at 432-33 (citing Bi-Metallic Inv. Co., 239 U.S. at 445-46).[7]

### III.     Does FTEPA Violate Jones's Right to Seek Redress from the Courts?

Jones next complains that FTEPA's protection for compliance provision "bars [his] claims for age discrimination" and thus "violates [his] First Amendment [r]ight to [p]etition the courts for redress of his grievances." Pl.'s Opp'n at 40-41; see Bill Johnson's Rests. v. Nat'l Labor Relations Bd., 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."). Not so. FTEPA may eliminate Jones's statutory claims for age discrimination, but narrowing the scope of statutory rights is entirely within Congress's powers. See Logan, 455 U.S. at 432 ("Of course, the State remains free to create substantive defenses or immunities for use in adjudication -- or to eliminate its statutorily created causes of action altogether . . . ."). FTEPA does not, therefore,

---

[7] Jones also contends that FTEPA violates his substantive due process rights. But as Jones concedes, his substantive due process claim receives the same rational basis review as his equal protection challenge. See Pl.'s Opp'n at 32; Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976) ("It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."). For the same reasons that they do not violate equal protection, then, FTEPA's provisions do not violate Jones's substantive due process rights.

violate Jones's First Amendment rights.

## IV. Is FTEPA a Bill of Attainder?

Jones's final constitutional challenge is that FTEPA is an unconstitutional bill of attainder. See U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."). Bills of attainder are "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." United States v. Lovett, 328 U.S. 303, 315-16 (1946). "Under the now prevailing case law, a law is prohibited under the bill of attainder clause 'if it (1) applies with specificity, and (2) imposes punishment.'" Foretich v. United States, 351 F.3d 1198, 1217 (D.C. Cir. 2003) (quoting BellSouth Corp. v. Fed. Commc'ns Comm'n, 162 F.3d 678, 683 (D.C. Cir. 1998)). Even assuming that FTEPA "applies with specificity," however, it does not impose punishment.

To determine whether a statute imposes punishment, the Court examines "'(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish.'" Id. at 1218 (quoting Selective Serv. Sys. v. Minn. Pub. Interest Research Group, 468 U.S. 841, 852 (1984)). "The [Supreme] Court has applied each of these criteria as an independent -- though not necessarily decisive -- indicator of punitiveness." Id.

Applying these criteria here, the Court concludes that FTEPA is not a bill of attainder. For one, neither of FTEPA's challenged provisions inflict the sort of burdens "historically associated with punishment." See Selective Serv. Sys., 468 U.S. at 853. Although "legislative

bars to participation by individuals or groups in specific employments or professions" may constitute punishment, id. at 852, FTEPA's nonretroactivity provision does not bar Jones from working as a commercial airline pilot. Rather, it simply regulates the circumstances under which Jones may engage in such work. And while "a denial of access to the courts, or prohibiting a party from bringing an action, has been defined as punishment," Ernst & Young v. Depositors Econ. Prot. Corp., 862 F. Supp. 709, 716 (D.R.I. 1994), FTEPA's protection for compliance provision does not, by merely narrowing the scope of statutory causes of action, deny Jones access to the courts, see Logan, 455 U.S. at 432. Both provisions may harm Jones's interests, but "[f]orbidden legislative punishment is not involved merely because the Act imposes burdensome consequences." Nixon v. Adm'r of General Servs., 433 U.S. 425, 472 (1977).

The two remaining prongs of the analysis further establish that FTEPA is not a bill of attainder. As the Court has already explained, the Act's challenged provisions each further nonpunitive and rational legislative purposes. And there is no evidence at all in FTEPA's legislative record evincing a congressional intent to punish commercial pilots who were between the ages of 60 and 64 at the time of the Act's passage. Accordingly, FTEPA is not a bill of attainder.

## V. Remaining Issues

Besides his constitutional challenges to FTEPA, Jones has raised several statutory claims, which fail for the most part because his constitutional claims are unsuccessful. He first contends that ALPA's encouragement of FTEPA's passage violates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. See Pl.'s Opp'n at 41-43. But even assuming that the ADEA ever outlaws lobbying for the enactment of a statute -- and Jones has offered no reason to

think it does -- "when a person petitions the government for redress, the First Amendment prohibits any sanction on that action . . . so long as the petition was in good faith." Nader v. Democratic Nat'l Comm., 567 F.3d 692, 696 (D.C. Cir. 2009). Jones contends that bad faith exists here, as "ALPA knew or must have known that FTEPA had no legitimate constitutional purpose and was completely and objectively baseless." Pl.'s Opp'n at 42. This argument fails, if for no other reason than because FTEPA is constitutional.[8]

Jones next argues that ALPA also violated the ADEA by, inter alia, excluding him from the union once he turned 60 and was involuntarily retired. See Am. Compl. ¶ 196. Jones has waived any such claims, however, as he failed to respond to ALPA's arguments on these points in its motion to dismiss. See Hopkins v. Women's Div., Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").[9]

Finally, Jones seeks the release of several documents from the EEOC under FOIA.[10] The

---

[8] Jones also argues that both ALPA and Continental violated New Jersey's anti-discrimination law by, for example, treating him differently than other pilots. Am. Compl. ¶¶ 197-200; see Pl.'s Opp'n to Continental's Mot. to Dismiss [Docket Entry 29], at 5. Jones concedes, however, "that if the challenged portions of FTEPA are constitutional, they preempt his age discrimination claims under the New Jersey Law Against Discrimination." Id. at 4.

[9] Strangely, Jones also "challenge[s] the [Federal Aviation Administration's] now moot denial of his petition for exemption from the old Age 60 Rule." Pl.'s Opp'n to Gov't's Mot. to Dismiss [Docket Entry 27], at 16 n.10. As Jones himself recognizes, however, the D.C. Circuit has already held any such challenge to be moot. See Jones v. Dep't of Trans., No. 08-1394 (D.C. Cir. Apr. 22, 2009); Am. Compl. ¶ 123.

[10] These documents include two email exchanges between EEOC employees, and portions of a memorandum from an EEOC investigator. See Gov't's Mot. for Summ. J. ("Gov't's Mot.") [Docket Entry 18], Exhibit 5 (Vaughn Index).

EEOC withheld these documents under FOIA's deliberative process exemption, deeming them pre-decisional and deliberative. See Gov't's Mot., Decl. of Stephanie Garner, ¶ 8; Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (the deliberative process privilege exempts from disclosure "advisory opinions, recommendations, and deliberations that are part of a process by which governmental decisions and policies are formulated"). Jones concedes that these documents are pre-decisional and deliberative. See Pl.'s Opp'n to Gov't's Mot. [Docket Entry 33], at 3. But he contends that because FTEPA is unconstitutional, the EEOC should nonetheless be forced to disclose these documents under the crime-fraud exception to the deliberative process exemption. See id. at 4-5. Jones agrees, however, that if FTEPA is constitutional, "then the Federal Defendants' summary judgment is well taken and should be simultaneously granted." Id. at 5. In light of its findings on FTEPA's constitutionality, the Court will do so.

## CONCLUSION

For the reasons detailed above, the Court will grant all defendants' motions to dismiss Jones's complaint, as well as the United States's motion for partial summary judgment on Jones's FOIA claim. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: May 25, 2010